240-05/MEU
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
Hyundai Merchant Marine Co., Ltd.
80 Pine Street
New York, NY  10005
(212) 425-1900
(212) 425-1901 fax

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
HYUNDAI MERCHANT MARINE CO., LTD.,

                         Plaintiff,

     - against -

GLOBAL INFRASTRUCTURE HOLDINGS, LTD.,

                     Defendant.
-----------------------------------------------------------------x

05 CIV _6254_  (_VM_ )

**VERIFIED COMPLAINT**

     Plaintiff HYUNDAI MERCHANT MARINE CO., LTD. ("Hyundai"), through its

attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against

Defendant GLOBAL INFRASTRUCTURE HOLDINGS, LTD. ("Global"), alleges upon

information and belief as follows:

     1.     This is an admiralty and maritime claim within the meaning of Rule 9(h)

of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a

maritime contract of charter party by Defendant Global.  The case also falls within the

Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333.  Jurisdiction is

also proper pursuant to the New York Convention on the Recognition and Enforcement

of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Arbitration Act,

9 U.S.C. §1 *et seq.* and this Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.

2.    At all times relevant hereto, Plaintiff Hyundai was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a registered office at 66 Jeokseon-dong, Jongno-gu, Seoul, Korea 110-052.

3.    At all times relevant hereto, Defendant Global was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a registered office at LOB 16 411, Jebel Ali Free Zone, Dubai, United Arab Emirates.

4.    On or about June 16, 2005, Plaintiff Hyundai, as time-chartered disponent owner of the M/V SPLIT, entered into a maritime contract of charter party on the GENCON form with Defendant Global, in which Hyundai agreed to let the M/V SPLIT to Global, for a voyage from Baltimore, Maryland to Ploce, Croatia for the carriage of a cargo of coal pursuant to the terms and conditions of a fixture recap amending charter party terms for the charter of the M/V BONASIA.  A copy of the fixture recap between Hyundai and Global and the M/V BONASIA charter party upon which the recap is based is attached hereto as Ex. 1.

5.    The charter of the M/V SPLIT was negotiated through brokers for each side.  Defendant Global's broker, Evolution Markets LLC, acted with actual or apparent authority to bind Global to the terms and conditions of the charter.

6.    The M/V SPLIT was timely delivered by Hyundai to Global at an agreed-upon location.

7.    Global caused the M/V SPLIT to be loaded with coal at Baltimore, Maryland.

8.      The M/V SPLIT carried the coal from the place of loading to Ploce, Croatia.

9.      Hyundai has satisfied all its obligations under the charter party.

10.     In breach of the charter party, Global has refused or otherwise failed to pay charter hire as and when the same became due.

11.     The vessel is currently at Ploce, Croatia and, pursuant to the terms of the charter party, because the cargo of coal has not been discharged, demurrage and detention charges for the account of Global are being incurred at a rate of $23,500 per day.  Global has refused or otherwise failed to pay for the same.

12.     As near as can presently be estimated, Global owes Hyundai $842,467.10 in unpaid freight for carriage of the cargo to Ploce, Croatia.

13.     Global additionally owes a further $23,500 per day in demurrage and detention costs for each day the vessel is delayed at Ploce and during such period as the cargo remains aboard the vessel.

14.     Despite due demand by Hyundai to Global for these amounts, Global has refused or otherwise failed to pay the outstanding amounts due and has refused to provide security for the demurrage and detention costs.

15.     Global's failure to pay Hyundai is a breach of the charter party.

16.     The charter party provides that the contract is subject to US law and that disputes arising under the charter party are subject to resolution by arbitration at New York.  Plaintiff Hyundai specifically reserves its right to arbitrate the substantive matters herein before a panel of arbitrators (or before a single arbitrator if agreement by the parties is so obtained) at New York.

17.    Arbitration has been demanded by Hyundai of Global but Global has refused or otherwise failed to nominate an arbitrator.

18.    Upon information and belief, and after investigation, Defendant Global cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising of, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant Global (hereinafter, "ASSETS"), including but not limited to ASSETS at, being transferred through, or being transferred and/or wired to or from Credit Agricole (Suisse) S.A., Bank of America, Bank of New York, Citibank, or others.

19.    The total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Hyundai against Global includes:

(i)    Unpaid hire in the sum of $842,467.10 which Global has improperly failed to pay;

(ii)    Estimated future demurrage and detention in the sum of $493,500.00 which will be incurred at the rate of $23,500 per day until the cargo of coal is discharged, and the holds cleaned and the vessel returned to Hyundai;

(iii)    Estimated attorneys' fees and disbursements, together with the costs of the arbitration, including arbitrators' fees, in the amount of $50,000.00 which may be recoverable in arbitration;

(iv)   Interest at the rate of 6% per annum, which is recoverable in arbitration, estimated to the time of entry of judgment in three years of $249,474.08;

for a total claim amount sought to be attached of $1,635,441.18.

WHEREFORE, Plaintiff Hyundai prays:

a.   That process in due form of law according to the practice of this Court issue against Defendant Global, citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal amount of the claim of $1,635,441.18 plus interest, costs and attorneys fees;

b.   That Defendant Global be compelled to arbitrate the substantive matters of this dispute pursuant to the terms of the charter party;

c.   That if Defendant Global cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant Global, up to and including the claim of **$1,635,441.18** be restrained and attached, including, but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant Global by Credit Agricole (Suisse) S.A., Bank of America, Bank of New York, Citibank and/or any other garnishee(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued herein may be served;

    d.    That Plaintiff Hyundai have such other, further and different relief

as this Court may deem just and proper in the premises.

Dated: New York, New York
       July 7, 2005

                  FREEHILL HOGAN & MAHAR, LLP
                  Attorneys for Plaintiff
                  HYUNDAI MERCHANT MARINE CO., LTD.

        By: _____

                  Michael E. Unger (MU 0045)
                  Lawrence J. Kahn (LK 5215)

                  80 Pine Street
                  New York, NY  10005
                  (212) 425-1900
                  (212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York   )
                  ) ss.:
County of New York )

      MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

    1.    I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

    2.    The sources of my information and the grounds for my belief are communications from our client and documents provided by our client regarding the claim.

    3.    The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                          Michael E. Unger

Sworn to before me this
7th day of July 2005

Notary Public

GLORIA J. REGIS HOSEIN
Notary Public, State of New York
No. 01RE6065625, Qualified in Kings County
Certificate Filed in New York County
Commission Expires October 22, 2005

GLORIA J. REGIS HOSEIN
Notary Public, State of New York
No. 01RE6065625, Qualified in Kings County
Certificate Filed in New York County
Commission Expires October 22, 2005

NYDOCS1/240717.1

7

E X H I B I T   1

240-05

Jason Lee

보낸 사람: SHIM.TAERYONG [gastl@hmm.co.kr]
보낸 날짜: 2005년 7월 1일 금요일 오전 8:38
받는 사람: Jason Lee
참조: Chris Paik
제목: FW: 'SPLIT' / GLOBAL - COAL / NORFOLK-PLOCE

*VOY C/P FIXTURE & PRO FORMA*

B.Rgds,

====================================================

Richard Shim (A/MGR)
General Cargo Dep.
Hyundai Merchant Marine Co., Ltd.
Tel/Fax : 82-2-3706-5723/82-2-734-8497
Mob.Phone : 82-16-9885-1762
E-mail : gastl@hmm.co.kr

====================================================

-----Original Message-----
From: "Baek.HoJong" <ttbhj@hmm.co.kr>
Sent: Thursday, June 16, 2005 4:37 AM
To: "Jung.Joon" <scjjj@hmm.co.kr>, "SHIM.TAERYONG" <gastl@hmm.co.kr>
Cc: "YouSeub.Jung" <tbysj@hmm.co.kr>
Subject: 'SPLIT' / GLOBAL - COAL / NORFOLK-PLOCE

하기와 같이 SUB FIX RECAP 을 첨부 하오니 참조 하시길 바랍니다.

-----Original Message-----
From: "Lalemant USA Inc." <brokers@lalemantusa.com>
Sent: Wednesday, June 15, 2005 1:30 PM
To: "brokers@lalemantusa.com" <brokers@lalemantusa.com>
Subject: RE: 'SPLIT' / GLOBAL - COAL / NORFOLK-PLOCE

From: LALEMANT USA INC.
Message No : 703974
Date: 15-Jun-2005 15:30


TO: HMM NJ            / HJ
TO: GLOBAL USA REP / MARKUS BATES


RE: 'SPLIT' / GLOBAL - COAL / NORFOLK-PLOCE
====================================================

*Enclosure #2*

-2-

CONFIRM AGREED SUBJECT CHARTS RECON (INCLUDING SHIPPERS/RCVRS APPROVALS) BY 10:00 HOURS NYT TMMRW

OWNERS: Hyundai Merchant Marine, SEOUL, S.KOREA - as disponent owners

MV " SPLIT "

SDBC/98 BLT /CROATIAN FLAG

42,584 MT ON 10,987 m SSW
LOA/BEAM 187,63 m/ 30,78 m
GRT/NRT 24,533 / 13,824
TPC abt 51.4
5 Holds / 5 Hatches/Type of hatch - covers: Mc Gregor, folding type HATCHES (m)
No. 1        12,80 x 16,00
No. 2        19,20 x 16,00
No. 3        19,20 x 16,00
No. 4        19,20 x 16,00
No. 5        19,20 x 16,00
CAPACITIES OF CARGO HOLDS:

| Hold: | Grain (cft) | BALE (cft) |
|---|---|---|
| No. 1 | 276,780 | 263,776 |
| No. 2 | 385,620 | 368,636 |
| No. 3 | 371,476 | 358,003 |
| No. 4 | 385,592 | 368,724 |
| No. 5 | 386,022 | 372,489 |
| TOTAL: | 1,805,490 | 1,731,628 |

4 X 30MT CRNS
Ballast : abt 14,00 knots on abt 29.50 mt HFO (380 CST) Draft 10,100 m
Laden : abt 13,50 knots on abt 29.50 mt HFO (380 CST) Draft 10,970 m
Port consumption:
IDLE                      abt 2,80 mt  HFO(380 CST)/ daily
ALL GEAR WORKING          abt 3,80 mt  HFO (380 CST)/ daily

- OPEN CAMDEN NJ ON 19/21 JUNE
  ETA BALTIMORE 20/22 JUNE

- FULLY SUITABLE FOR PERFORMING THE VOYAGE/TRADE
- SINGLE DECK BULKCARRIER W/STEEL FLOORS/TRIMMING PLATES/FULLY   SUITABLE FOR THE CARRIAGE OF COAL IN BULK
- UNOBSTRUCTED HOLDS SUITABLE FOR GRAB AND MECHANICAL EQUIPMENT/   PAYLOADER  DISCHARGE
- CLASSED HIGHEST LLOYDS REGISTER OR IACS EQUIVALENT
- 1ST CLASS P&I CLUB/ISM APPROVED/ISPS CERTIFIED/ITF EQUIVALENT
- FINAL PERFORMING VESSEL TO BE NOMINATED MIN 3 DAYS
  PRIOR ETA LOADPORT BUT ALWAYS PRIOR 1ST LAYDAY
- VESSELS IN EXCESS OF 20 YEARS OVERAGE UPTO MAX $ 7,500 PREMIUM
  FOR OWNERS ACCT AGAINST PROPER VOUCHERS

FOR: A/C:  GLOBAL INFRASTRUCTURE HOLDINGS, LTD, DUBIA

PRINCIPAL OFFICES AT LOB 16 411, JEBEL ALI FREE ZONE, DUBAI,UAE.

THEY ARE THE MOTHER COMPANY OF ISPAT METALICS AND ISPAT
INDUSTRIES. THEY HANDLE ALL THE PURCHASING OF ENTIRE STEEL PLANTS
GLOBALLY FOR ISPAT AND HAVE PURCHASED PLANTS IN BOSNIA AND NIGERIA. THEY ALSO HANDLE THE
PURCHASE OF THE RAW MATERIALS LIKE COAL AND THE SALE OF THEIR STEEL.

THEY RECENTLY FIXED - THE M/V "SWAN" (RANGER MARINE),
M/V "XANADU" (HAMBURG BULK CARRIERS) AND M/V "BONASIA" (NORDEN).

1. CARGO SIZE : 40,500 TO 42,500 MT BULK COAL - QTY IN OWNERS OPTION

   OWNERS / MASTER TO SATISFY THEMSELVES ON RESTRICTIONS OF LOADABLE
   QUANTITIES WITH RESPECT TO LOAD AND DISCHARGE PORT/TERMINAL
   RESTRICTIONS.

2. LOADING:   CNX Terminal, Baltimore

OWNERS TO SATISFY THEMSELVES WITH ANY RESTRICTION SUCH AS LOA/BEAM/
DRAFT ETC

CHARTS ADVISE WOG:

CNX MARINE TERMINAL -            (FORMALLY CONSOLIDATION COAL PIER)
LENGHT OF PIER:          1150 FT
MAX DRAFT ALONGSIDE:        50 FT
MAX SAILING DRAFT 47' 00" ANY TIME / 47' 06" TWO HOURS PRIOR HIGH WATER WITH
AUTHORIZATION OF PILOTS AND TERMINAL
MAX LOA:              1100 FT
MAX BEAM:             175 FT
SALINITY / DENSITY:        1.003-1.004 / 1.001-1.002
AIR DRAFT RESTRICTION:     55 FT. MAX ARRIVAL - HATCH COAMING TO WATER LINE

3. LOADING TERMS: 30,000MT PWWD SHINC - 12 HOURS TURN TIME
   UNLESS SOONER COMMENCED IN WHICH CASE ACTUAL TIME USED TO COUNT

   EXCLUDING 'SUPER/STEVEDORE HOLIDAYS 17:00 DAY PRIOR/08:00 DAY
   AFTER  NTC UNLESS USED AND DRAFT SURVEYS NTC.

   AT LOAD PORT NOTICE OF READINESS TO BE TENDERED SHINC .
   NOR MAYBE TENDERED BY RADIO, FAX, TLX AFTER THE VSL HAS
   ARRIVED AT
   LOAD PORT, WIBON, WIPON, WCCON, WIFPON PROVIDED THE SAME IS
   SUBSEQUENTLY  GRANTED. ACTUAL TIME LOST IN OBTAINING  FREE    W
   PRATIQUE & CUSTOMS CLEARANCE  SHALL NOT COUNT AS LAYTIME.
   IF FOR ANY REASON THE VSL IS NOT READY TO
   DISCHARGE CHRTS CARGO DUE TO DEFAULT OF THE VSL, THEN ALL SUCH
   DELAYS NOT TO COUNT AS LAYTIME BENDS.

   IN THE EVENT THAT THE  LOADING BERTH IS NOT OCCUPIED,
   THEN NOTICE OF READINESS TO BE  TENDERED ONLY UPON BERTHING.

   TIME SHIFTING FROM WAITING PLACE/ANCHORAGE TO LOADING
   BERTH NTC EVEN IF VESSEL ON DEMURRAGE

2005-07-01.                                                                              33

4. DISCHARGING PORT: BERTH 11 OR 12;  PLOCE, CROATIA

LOA 240 M / DRAFT 12.5 M / BEAM 33 - ALL W/OUT GTEE
OWNERS TO SATISFY THEMSELVES WITH ANY RESTRICTION SUCH
AS LOA/BEAM/ DRAFT ETC

5. DISCHARGING TERMS:

10,000 MT PWWD SATSHEX (SATURDAYS & SUNDAYS OR DAY
PRIOR A HOLIDAY TO 08:00 HOURS MONDAY OR DAY AFTER HOLIDAY
NTC UU ATUTC - DRAFT SURVEYS NTC.)

12 HOURS TURNTIME UNLESS SOONER COMMENCED IN WHICH
CASE SUCH TIME TO COUNT

AT DISCHARGE PORT NOTICE OF READINESS TO BE TENDERED IN WRITING
ON WORKING DAYS BETWEEN 0900 TO 1600 HOURS MONDAY TO FRIDAY
AND BETWEEN 09:00 TO 12:00 HOURS SATURDAYS

NOR MAYBE TENDERED BY RADIO,FAX,TLX AFTER THE VSL HAS ARRIVED AT
DISCH PORT, WIBON, WIPON, WCCON, WIFPON PROVIDED PROVIDED THE
SAME IS SUBSEQUENTLY GRANTED. ACTUAL TIME LOST IN OBTAINING
FREE PRATIQUE & CUSTOMS CLEARANCE SHALL NOT COUNT AS LAYTIME.
IF FOR ANY REASON THE VSL IS NOT READY TO
DISCHARGE CHRTS CARGO DUE TO DEFAULT OF THE VSL, THEN ALL SUCH
DELAYS NOT TO COUNT AS LAYTIME BENDS.

IN THE EVENT THAT THE DISCHARGING BERTH IS NOT OCCUPIED, THEN NOTICE OF READINESS
TO BE TENDERED ONLY UPON BERTHING.

TIME SHIFTING FROM WAITING PLACE/ANCHORAGE TO DISCHARGE
BERTH NTC EVEN IF VESSEL ON DEMURRAGE

6. LAYDAYS:    20/30 JUNE

7. FREIGHT RATE:  US$ 20.60 PMT FIOST  ON B/L WEIGHT

8. FREIGHT PAYMENT:
FREIGHT TO BE PAID 95 PCT ON B/L QUANTITY WITHIN 5 BANKING
DAYS AFTER COMPLETION OF LOADING AND SIGNING/RELEASING
CLEAN BS/L TO BE  MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY
DATED :. (OR C/P DATE)

BALANCE OF FREIGHT ON B/L QUANTITY TO BE PAID AFTER COMPLETION
OF DISCHARGE TOGETHER WITH ANY UNDISPUTED
DEMURRAGE/DESPATCH MONEY AT LOADING/
DISCHARGING PORT(S) WITHIN 30 DAYS AFTER COMPLETION OF DISCHARGE
RESPECTIVELY.

FREIGHT DEEMED EARNED ON SHIPMENT
LOST.

IN THE ABSENCE OF ORIGINAL B/LS AT DISCHPORT, OWNERS/MASTER
UNDERTAKE TO DISCH AND RELEASE CGO AGAINST CHRTS SINGLE LOI IN
OWNERS PNI CLUB STANDARD WORDING, BUT W/O ANY BANK GTEE AND/OR

2005-07-01

ENDORSEMENT BUT LOI TO BE COUNTERSIGNED BY THE CARGO RECEIVERS.

10. STEVEDORE DAMAGE, IF ANY, TO BE SETTLED BETWEEN OWNERS AND
    STEVEDORES. CHARTERERS LENDING ANY ASSISTANCE/INFLUENCE
    THEY MAY HAVE WITH THE RECEIVERS IN HELPING OWS RECOUP AND
    SUCH COSTS/DAMAGES.

11. DEMURRAGE AND DESPATCH:
    US$ 23,500 PER DAY OR PRO-RATA, HALF DESPATCH ON LAYTIME SAVED
    BENDS

12. TAXES AND CHARGES:
    ALL TAXES, INSURANCE, DUES AND CHARGES ON VESSEL INCLUDING
    FREIGHT TAX, IF ANY, TO BE FOR OWNERS ACCOUNT, AND ALL
    TAXES, DUES AND CHARGES ON CARGO TO BE FOR CHARTERERS ACCOUNT.
    BUT UNDERSTOOD THAT PLOCE PORT DUES (WHICH ARE ABOUT
    50 CENTS PMT OF CARGO)
    ARE NORMAL PORT COST (INCLUDED IN VESSEL'S D/A FROM AGENTS)
    AND TO BE FOR OWNERS ACCT

13. CHARTS AGENTS:

    LOAD -    Inchcape

    Don Maney
    Inchcape Shipping Services, Baltimore

    410-631-0170 (office)
    410-631-7119 (fax)
    443-506-4891 (mobile)
    Email: ISSBaltimore.Operations@ISS-Shipping.com

    DISCHARGE - JADROAGENT.

    TEL:    385 20 679 964
    FAX:    385 20 670 130
    EMAIL:  AGENCIJA-PLOCE@JADROAGENT.HTNET.HR

14. COMM:  2.50 PCT TTL HERE FOR DIVISION
           WHICH CHARTS MAY DEDUCT FROM INITIAL FREIGHT PAYMENT

15. NY GA/ARB

16. STANDARD BIMCO ISPS CLAUSE FOR VOYAGE CHARTER PARTIES TO BE
    INCORPORATED HEREIN.

17. O'WISE SUB DETAILS OF M/V 'BONASIA' C/P DTD APRIL 15TH, 2005

END.

RGDS,
MJB

LALEMANT (USA) INC
660 WHITE PLAINS ROAD
SUITE 530
TARRYTOWN NY 10591 USA
TEL 914-846-2800
FAX 914-846-2818
EMAIL BROKERS@LALEMANTUSA.COM; OPERATIONS@LALEMANTUSA.COM

Processed & Sent via Danaos Info@gate Communication & Management Software

COPY

| 1. Shipbroker | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "G E N C O N" |
|---|---|
| | **2. Place and date**<br>Tarrytown, New York April 15th, 2005. |
| **3. Owners/Place of business (CL 1)**<br>D/S NORDEN A/S, Copenhagen, Denmark as Owners | **4. Charterers/Place of business (CL 1)**<br>GLOBAL INFRASTRUCTURE HOLDINGS, LTD.<br>LOB 16 — 411<br>JEBEL ALI FREE ZONE<br>DUBAI, UAE |
| **5. Vessel's name (CL 1)**<br>M/V "BONASIA" or Substitute | **6. GRT/NRT (CL 1)** |
| **7. Deadweight cargo carrying capacity in tons (abt.) (CL 1)** | **8. Present position (CL 1)** |
| **9. Expected ready to load (abt.) (CL 1)** | |
| **10. Loading port or place (CL 1)**<br>Pier 6, Norfolk, VA.<br>Owners to satisfy themselves with any<br>restrictions such as LOA/Beam/Draft, etc. | **11. Discharging port or place (CL 1)** Berth 11 or 12, Ploce, Croatia.<br>LOA 240 M/Draft 12.5 M/Beam 35-All without<br>guarantee. Owners to satisfy themselves with<br>restrictions such as LOA/Beam/Draft, etc. |
| **12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (CL 1)**<br><br>50,000 metric tons 10% more or less 'one grade' of coal in bulk.<br>Owners/Master to satisfy themselves on restrictions of loadable quantities with respect to load<br>and discharge port/terminal restrictions. | |
| **13. Freight rate (also state if payable on delivered or intaken quantity) (CL 1)**<br><br>See Clause 57. | **14. Freight payment (state currency and method of payment; also beneficiary and bank account) (CL 4)**<br><br>See Clause 23. |
| **15. Loading and discharging costs (state alternative (a) or (b) of CL 5; also indicate if vessel is gearless)**<br>Free in stowed trimmed free out spout trimmed<br>as per customs of trade. | **16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (CL 6)**<br>a) Laytime for loading<br>See Clause 18.<br>b) Laytime for discharging<br>See Clause 18.<br>c) Total laytime for loading and discharging<br>See Clause 18. |
| **17. Shippers (state name and address) (CL 6)**<br><br>As per Box 4. | |
| **18. Demurrage rate (loading and discharging) (CL 7)**<br>See Clause 18. | **19. Cancelling date (CL 10)**<br>See Clause 57. |
| | **20. Brokerage commission and to whom payable (CL 14)** |
| **21. Additional clauses covering special provisions, if agreed.**<br><br>The attached Rider Clauses number 1 to 64 inclusive and Gencon Charter Party I and II are deemed<br>to be fully incorporated in this Charter Party and to form part of same. | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

Adopted by the Documentary Committee of the General Council of British Shipping, London, the Documentary Committee of the Japan Shipping Exchange, Inc., Tokyo

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen.

Printed in U.S.A. for Association of Ship Brokers and Agents (U.S.A.), Inc. (ASBA) New York by authority of BIMCO, Copenhagen and International Maritime Conference (BIMCO), Copenhagen.

Part I

27

PART II

"Gencon" Charter (As Revised 1922 .... 976)

Including "F.I.O." Alternative, etc.

**1.** It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/nett Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under the Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that

The said vessel shall proceed to the loading port or place stated in Box 10 ...

(Charterers to provide all men and/or material for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading ... or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

**2. Owners' Responsibility Clause**
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.
And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature of insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

**3. Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

**4. Payment of Freight** ... **and Clause 23.**
The freight to be paid in the manner prescribed in Box 14 in cash ...
Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

**5. Loading/Discharging Costs** ... **See Clause 18.**

**6.** **Laytime** ... **See Clause 18.**

**7. Demurrage**
Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day payable day by day to be ... loading and discharging.

**1-8. Lien Clause**
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for deadfreight and demurrage (including damages for detention), incurred at port of loading. Charterers also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.    **where defenit caused Charter**

**9. Bills of Lading**
The Captain to sign Bills of Lading if such rate or freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.    **accordin to Mate's receipts**

**10. Cancelling Clause**
Should the vessel not be ready to load (whether in berth or not) on ... or before the date indicated in Box 18, Charterers have the option of cancelling this contract, such option to be declared, if demanded, ... at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, the Charterers to be informed as soon as possible, and if the vessel is not delayed for more than 10 days after the day she is stated to be ... expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

**11. General Average**    **In New York**
General average to be settled according to York-Antwerp Rules, 1924. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

**12. Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

**13. Agency** ... **See Clause 35**

**Arbitration**    New York – American Law (See Clause 31)

**14. Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 21.
In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and deadfreight to be paid by the Owners to the brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.    **deadfreig and demurrage**

**15. GENERAL STRIKE CLAUSE**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port, or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**16. War Risks ("Voywar 1950")**

**17. General Ice Clause**

## PART II

### "Gencon" Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.

performance of the contract will subject the Vessel, her Master and crew or her cargo, to war risks, the cargo shall be discharged, or if the discharge has been commenced shall be completed, at any safe port in vicinity of the port of discharge as may be ordered by the Charterers if no such orders shall be received from the Charterers within 48 hours after the Owners have despatched a request by telegram to the Charterers for the nomination of a substitute discharging port, the Owners shall be at liberty to discharge the cargo at any safe port which they may, in their discretion, decide on and such discharge shall be deemed to be due fulfilment of the contract of affreightment, in the event of cargo being discharged at any such other port, the Owners shall be entitled to freight as if the discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto.

(5) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, delivery or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to some other port given by any Government or by any belligerent or by any organised body engaged in civil war, hostilities or warlike operations or by any person or body acting or purporting to act as or with the authority of any Government or belligerent or of any such organised body or by any committee or person having under the terms of the war risks insurance on the Vessel, the right to give any such directions or recommendations.

(b) If, by reason of or in compliance with any such directions or recommendations, the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the Vessel may proceed to any port as directed or recommended or to any safe port which the Owners in their discretion may decide on and there discharge the cargo.

(5) Any extra expenses (including insurance costs) involved in discharge by reason of the loading port or in reaching or discharging the cargo by the Charterers and/or cargo owners, and the Owners shall have a lien.

### 17. GENERAL ICE CLAUSE
Port of loading

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case ice sets in, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owners' benefit for any port or ports including port of discharge.

Port of discharge

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge the Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage.

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

CLAUSE 18: LOADING/DISCHARGING TERMS/DEMURRAGE

LOADING TERMS:

The cargo is to be loaded into the vessel at the rate of 30,000
metric tons per weather working day of 24 consecutive hours,
Sundays and Holidays included, excluding Super/Stevedore Holidays
and draft surveys. Time from 17:00 hours on the day preceding a
Stevedore Holiday to 08:00 hours on the next working day not to
count unless used, when actual time used to count.

Laytime for loading shall commence 12 hours, under application of
time exempted as above, after valid Notice of Readiness has been
given in writing, or by radio, fax or telex to shippers or to
agents at port of loading unless sooner commenced, in which case
actual time used is to count. Such notice may be given at any time
of the day or night, Sundays and Holidays included, but not on
Holidays or prior to 09.00 a.m. on March 15th, after vessel has
arrived at loading port, whether in berth or not, whether in port
or not, whether in custom clearance or not, whether in free in
pratique or not, provided the same is subsequently granted. Actual
time used in obtaining free pratique and customs clearance shall
not count as laytime. If for any reason the vessel is not ready to
load Charterer's cargo due to default of the vessel, then all such
delays are not to count as laytime.

Upon tendering Notice of Readiness the vessel's holds shall be
clean, dry to Shipper's/Charterer's satisfaction and ready to
receive the cargo. In the event of a dispute a jointly appointed
independent surveyor will be appointed whose decision to be final
and binding on Shippers/Charterers/Owners.

Before tendering Notice of Readiness the vessel to be in everyway
suitable for loading, receiving and stowing of the cargo. Hatch
beams removed derricks/raised/cranes set and ready to work if
required and permitted by port regulations, failing same Charterers
can refuse to accept Notice of Readiness tendered.

DISCHARGING TERMS:

The cargo is to be discharged at the rate of 10,000 metric tons per
weather working day of 24 consecutive hours Saturday noon, Sundays
and Holidays excluded, provided the vessel can deliver the cargo at.

1

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 18 - CONTINUED

the above discharge rates, and excluding draft check time. Time
from noon Saturday or 12 hours on the day preceding a Holiday to
08.00 a.m. Monday or on the next working day not to count unless
used, when actual time used to count.

Laytime shall commence 12 hours, under application of time exempted
as above, after valid Notice of Readiness has been given in
writing, or by radio, fax or telex to Receivers or to agents,
unless sooner commenced, in which case such time is to count.
Notice of Readiness to be tendered on working days between 09.00
hours to 16.00 hours Monday to Friday, and on Saturday between
09.00 hours to 12.00 hours, after the vessel has arrived at the
discharging port, whether in berth or not, whether in port or not,
whether in custom clearance or not, whether in free in pratique or
not, provided the same is subsequently granted. Actual time in
obtaining free pratique and customs clearance shall not count as
laytime. If for any reason the vessel is not ready to discharge
Charterer's cargo due to default of the vessel, then all such
delays are not count as laytime.

Demurrage: USD ~~.........~~ per day or pro-rata/half despatch laytime
saved at both ends. Laytime is non-reversible.

## CLAUSE 19

Stevedores, although appointed and paid for by Shippers/Charterers/
Receivers are to be considered Owners' servants and shall load,
stow and discharge the cargo in accordance with Master's
instructions, directions, supervision and under his responsibility.
Shippers/Charterers/Receivers not to be responsible for proper
stowage. Stevedore damage, if any, to be settled directly between
Owners and stevedores without Charterers' interference.

Master to notify stevedores/Agents/Shippers/Receivers of damages,
if any, in writing, immediately after occurrence, in case of hidden
damages latest upon detection but always prior to sailing
load/discharge port respectfully, otherwise stevedores not to be
held liable.

4(

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 19 - CONTINUED

If requested by the Owners Charterers to actively assist with all
possible efforts that Stevedores settle any damage for which
Stevedores are liable.

## CLAUSE 20

At loadport Notice of Readiness (NOR) shall be given to Charterers/
Shippers.

### Hatches
Opening and closing of hatches always to be performed by the ship's
crew, provided permitted by local regulations at both loading and
discharging ports and in Owner's time and account. Master to
arrange closing of hatches if weather is wet or threatening and if
ordered by port regulations/practice.

## CLAUSE 21: FORK LIFT TRUCK STOW

Shippers/Charterers/Receivers to have the option of using forklifts
during loading/discharging operations and Owners to allow same in
all compartments and warrant that the vessel is in every respect
suitable for forklift operations up to vessel's permissible tanktop
strength.

No cargo to be loaded into compartments obstructed by stanchions,
posts or other obstacles which are not easily accessible to
cranes/derricks or forklift operations or blocked by other part
cargoes.

## CLAUSE 22

Charterers have free use of all equipment and dunnage/lashing
materials on board.

The vessel shall give always free use of winches/derricks or cranes
up to their lifting capacity and supply free of charge sufficient
power and runners as on board and also to supply free to charge
sufficient power to drive all winches/derricks/cranes
simultaneously day and night, if when and where required.

3

41

CO
Y

__

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 22 - CONTINUED

Vessel to provide sufficient lights as onboard on deck and in holds
for night work if/when required, free of charge. Shorehands to be
employed at Shippers/Receivers risk and time.

If local regulations do not permit crew to open and/or close
hatches, then same to be for the Charterers' account.

Any time lost by reason of defective gear and equipment/breakdown
of same to be added to laytime pro-rata. Stevedore standby charge
and forklifts affected up to the end of the shift unless shore
equipment to be employed during such breakdown periods to be of
Owner's account.

Charterers however to advise costs involved and to secure Owners'
prior approval before engaging shore equipment. Extra costs, if
any, to be properly supported by evidencing vouchers, failing which
Owners are not obliged to accept settlement of same.

## CLAUSE 23: FREIGHT PAYMENT

Ninety five percent (95%) freight to be paid on Bill of Lading
quantity within five (5) banking days after completion of loading
and signing/releasing Clean on Board Bills of Lading, to be marked
"Freight Payable as per Charter Party dated April 15th, 2005" to
Owner's designated Bank account.

Bills of Lading to incorporate all terms, conditions, liberties and
exceptions including the lien and arbitration clauses of Charter
Party dated April 15th, 2005.

Balance of freight is to be calculated on the basis of Bill of
Lading quantity and is to be paid after completion of discharge
together with any undisputed demurrage/despatch money at loading/
discharging port (s) within 30 days after completion of discharge
Respectively to:
Nordea Bank Denmark A/S, Strandgade 3, 0900 Copenhagen C
Credit USD Account no 5005 553795
In Favour Of: Dampskibsselskabet D/S Norden A/S
Swift Code: NDEADKKK
Iban Code: DK7920005005553795

4

A3



COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 23 - CONTINUED

New York Corresponding Bank:
JP Morgan Chase Manhattan Bank
New York, N. Y.
Swift Code: CHASUS33
Ref: Norden/Global M/V "BONASIA" or Substitute
C/P dated 4/15/2005.

Full freight deemed earned on shipment of cargo discountless and
non-returnable ship and/or cargo lost or not lost.

In the absence of Original Bills of Lading at discharge port Owners/
Master undertake to discharge and release the cargo against
Charterers single Letter of Indemnity (LOI) in Owners' P and I Club
standard wording, but without any Bank guarantee and/or endorsement.
The Letter of Indemnity is to be countersigned by the cargo's
Receivers.

## CLAUSE 24

Any taxes, dues, and charges on cargo will be for Charterer's/
Shipper's account, but it is understood that Ploce Port dues (which
are about 50 cents per metric ton of cargo) are normal cost and to
be for Owners' account. Wharfage at discharge port on cargo is for
account of Charterers/Receivers.

Any taxes, insurance, dues and charges on the ship including
freight tax, if any for Owner's account, including agency fee.
Wharfage on vessel is for the Owners' account.

## CLAUSE 25

At loadport and discharge port Shippers/Receivers/Charterers to
have free use of all gears and dunnage/lashing materials on board.
Dunnage supplied, if any, for securing cargo shall become ship's
property unless being specifically required by Receivers.

## CLAUSE 26

In the event of a boycott or other difficulty arising due to
vessel's flag, or labour boycott or any other discrimination against

5



RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 26 – CONTINUED

the ship due to her registry and/or crew, time lost and all
consequences to be for Owners' account, and time not to count if
boycott/difficulty affects the loading/stowing/securing/discharging.
If loading/discharging of the vessel is adversely affected due to
any of the aforementioned reasons and if vessel is already on
demurrage, then demurrage to be suspended for period during which
loading/discharging cannot be carried out.

Acts of God, public enemies, restraints or rulers or established
authorities, rebellion, tumults, insurrections, political
disturbances, revolutions, riots, war, civil commotion, ice, fire,
flood, droughts, epidemics, quarantine, intervention of authorities,
all and every dangers and accidents of the seas, rivers, canals and
navigations of whatever kind and nature, stoppages at the mills or
on the railroads or seaboard and other unavoidable hindrances
affecting the loading, discharge, delivery or receiving of the cargo
during this voyage are excepted and neither Charterers nor
Shippers/Receivers shall be liable for any loss or damage resulting
from any such excepted causes.

If loading/discharging has commenced time lost by reason thereof
shall not count as laytime unless on demurrage. Owners to be fully
responsible for any consequences arising from disputes between them
and /or authorities and/or ship's crew/command.

## CLAUSE 27

Officers'/Crew's overtime always for Owner's account.

## CLAUSE 28

Immediately after shipment Owners/Master to provide:

a.   Master's Letter of Authority permitting Bills of Lading to be
     signed by Carriers or Agents.

b.   Certificate confirming satisfactory stowage and that no damage
     has been incurred by the vessel during loading operations, to
     be signed by Master.

6

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 29

Master/Owners' Agents to sign Statement of Facts for loading and
discharging marking their reservations if believed to be incorrect.

## CLAUSE 30

The ship to give notice on fixing 1 day and 12 hours ETA notices at
load port to:

Loadport Agents as follows:

ANDERS WILLIAMS SHIP AGENCY, INC.
201 E. City Hall Avenue
Norfolk, Virginia 23510
Tel: 757-457-8347 / Fax: 757-625-7794
E-mail: *Sharon.Baines@AndersWilliams.com*

The ship to give on 5/4/3/2/1 days and 12 hours ETA at discharge
port Agents.

Discharge port agents as follows:

JADROAGENT, International Shipping & Freight Agency Ltd.
Trg kralja Tomislava 20
20340 Ploce, Croatia
Tel: 385-20-679-964
Fax: 385-20-670-130
Telex: 26239 jadrag.rh
E-mail: *agencija-ploce@jadroagent.htnet.hr*

Owners will keep Charterers closely posted of vessel's movement
after loading Charterer's cargo.

## CLAUSE 31

Any dispute arising out of this Contract shall, unless the parties
agree forthwith on a single arbitrator, be referred to the final
arbitrament in New York of two arbitrators who shall be commercial
men carrying on business in New York, one to be appointed by each of
the parties with power to such arbitrators to appoint an umpire
whose decision shall be final and binding upon both parties.

7



RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

CLAUSE 32

Charter Party terms shall always supercede Bills of Lading terms
whenever contradictory, except in so far as Charter Party terms
effect the Consignee where Bills of Lading terms are paramount.

CLAUSE 33

The following clauses are to apply to this Charter Party and Bills
of Lading issued hereunder.

VOYWAR 93 - Is deemed to be inserted and forms part of this C/P.
New Jason Clause
Both to Blame Collision Clause
Club Bunker Clause
Chamber of Shipping Clause Paramount.
BIMCO ISPS Voyage Clause

CLAUSE 34

Owners to keep Charterers/Agents well advised of any change/ETA at
load/discharge port (refer notices Clause 30).

CLAUSE 35

Charterer's agents at both ends.
Owners to ensure sufficient funds are sent to Agents for pro-forma
disbursements prior to vessel's arrival.

CLAUSE 36

This fixture to remain fully private and confidential amongst
brokers/Owners and Charterers involved.

CLAUSE 37

Deleted

CLAUSE 38

Deleted

B

40



RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

CLAUSE 39

Owners to have the right of sub-letting the whole part of this
Charter, but shall remain responsible for the due fulfillment
thereof.

CLAUSE 40

Deleted

CLAUSE 41

Owners to provide Charterers with intended schedule/itinerary on
sailing last loadport.

CLAUSE 42 — (N/A to this trade)

[The intended stowage plan should be supplied 3 days before vessel's
arrival loadport.]

CLAUSE 43

Strictly no trans-shipment.
Strictly under deck stow only.

CLAUSE 44

Any expense resulting from vessel exceeding draft at load and
discharge port to be responsibility of Owners.

CLAUSE 45

Time shifting from waiting place/anchorage to loading/discharging
berth not to count even if the vessel is on demurrage.

If shifting at loadport/discharge port from one berth to another or
from waiting buoy or anchorage to safe buoy or anchorage within
harbour limits, is necessary due to vessel's overdraft, then all
shifting time not to count as laytime, where applicable.

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 47 CONTINUED

- Vessel has unobstructed holds suitable for grab and mechanical
  equipment/ payloader discharge, and is a ISM/ISPS certified and
  ITF or equivalent.

- Any overage premium for vessel's in excess of 20 years of age is
  for Owner's account but upto maximum USD 10,000.00 against
  presentation of proper vouchers.

## CLAUSE 48

Charterers to deliver free in and out spout trimmed, terms agreed in
this Charter Party.

## CLAUSE 49

Deleted

## CLAUSE 50

Owners have the option to substitute nominated vessel by other, but
Owners must name final performing vessel minimum 5 days prior to the
first day of the laydays with about same characteristics, same
loading capacity within the agreed laydays after due notification of
substituting vessel.

Owners to advise all details of the nominated vessel including:
name, flag, year built, LOA, Beam, DWT, expect arrival and sailing
draft, GRT, NRT, Class, P and I Club, service speed, FWB loading

Nomination of vessel subject to Charterers' reconfirmation within 1
business day after same has been presented in full to Charterers
prior to 3.30 p.m. Monday — Friday (Holidays excluded) New York
time.

## CLAUSE 51

Deleted

11



COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

CLAUSE 46

Deleted

CLAUSE 47: VESSEL

M/V BONASIA
Built:              2001
Flag:              Switzerland
Main Particulars:
Deadweight summer:  46,509 MT
Draft summer:       11.62 Meters
TPC:               51.5
International Tonnage Certificate
GRT/NRT:           27,011/16,011
Length Overall:    189.8 Meters
Beam:              31 Meters
Cargo Handling Equipment:
Cranes:            4 X 30 Electro-Hydraulic
Grabs:             4 X 10 Cubic Meters
Hatches/Holds:     5/5
Grain capacity of cargo holds in total: 59,820 Cubic Meters
Bale capacity of cargo holds in total: 57,237 Cubic Meters
Speed and Consumption
Main Engine:
Speed (ballast/laden): 14.5/14.5 Knots
Ballast:            23 MT IFO 380
Laden:             27 MT IFO 380
Auxiliary Engines:
At Sea:            Port working: 5.0 MT IFO + 0.3 MDO
                   Port idle: 2.5 MT IFO 380 + 0.3 MDO
All details given in good faith and without guarantee.
Vessel may consume small amount of MDO in narrow waters, canals, etc.

Owners warrant vessel:
- Fully suitable for performing the voyage/trade and as per her
  description clause.

- Single deck bulkcarrier with steel floors, trimming plates, fully
  suitable for the carriage of Coal in Bulk.

10

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

### CLAUSE 52

Opening and closing of hatches always to be performed by the ship's
crew, provided permitted by local regulations, same shall be done in
Owner's time and for Owner's account.

Rigging of cargo shall be always be performed by the ship's crew,
provided permitted by local regulations, same shall be done in
Owner's time and for Owner's account.

The Master to arrange for the closing of hatches in case of wet of
threatening weather perilous to the cargo, unless otherwise mutually
agreed between Owners/Charterers and Shippers, respectively
Receivers.

In case the loading/discharging operations cannot commence because
the stevedores are not allowed/able to board the ship, all
consequential costs arising therefore to be for Owner's account.

Hatch covers, sweat battens and any other similar equipment to be
stowed in such a way that they do not interfere with
loading/discharging operations. Hatch covers to be guaranteed by
Owners to be watertight at all times during the voyage and Owners to
provide, if required by Charterers, copy of vessel's current
classification certificate and Owners will maintain such condition
throughout this Charter Party.

If any of the aforesaid tasks are not permitted by local regulations
to be performed by vessel crew then same to be for Charterers'
account.

### CLAUSE 53

Owners warrant that vessel's arrival draft, gear, equipment shall
comply and be fully certificated (certificates on board) with the
official requirements and regulations of load/discharge ports and
that vessel is fully insured.

Throughout the period of the Charter the vessel will have on board
all necessary certificates to enable the vessel and crew to carry
the cargoes and trade within the trading limits allowed under this
Charter. Any consequential costs arising from non-compliance with
these requirements will be for Owner's account.

12



RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

## CLAUSE 54

Owners warrant carrying vessel will not be on last voyage or break-
up at destination voyage and to provide Charters with certificate to
this effect.

## CLAUSE 55

Deleted

## CLAUSE 56

Owners warrant that the performing ship is staunch/strong and is in
every way fitted for the voyage and to carry "coal in bulk" cargoes,
will maintain highest class Lloyds Register or equivalent; P and I
Club membership and exercise utmost due diligence toward her
seaworthiness throughout the duration of this Contract, will not be
sold and change ownership and will not drydock unless in a case of
emergency affecting the ship's seaworthiness and that specifically,
ventilators/hatches/covers/coamings/gaskets are n perfect order and
conditions.

If required the vessel shall furnish a certified calibration scale
for all tanks including fore and aft peaks, double bottom tanks and
deeptanks, if any. Plimsoll marks amidships and draft marks on both
port and starboard sides to be clearly cut and marked on shell
plating and Master to certify correctness of same.

## CLAUSE 57: FREIGHT / LAYCAN

Freight: USD ▓▓▓▓ per metric ton free in and out spout trimmed,
basis on Bill of Lading weight.

Laycan: April 24th – May 3rd, 2005. Vessel is expected to be ready to
load on commencement of laydays all going well, weather permitted,
unforeseen circumstances excepted.

13

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

**CLAUSE 58**

Deleted

**CLAUSE 59**

Deleted

**CLAUSE 60**

Deleted

**CLAUSE 61**

Deleted

**CLAUSE 62: BIMCO ISPS VOYAGE CLAUSE**

(A) (i) From the date of coming into force of the International
Code for the Security of Ships and of Port Facilities and the
relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation
to the Vessel, the Owners shall procure that both the Vessel and
"the Company" (as defined by the ISPS Code) shall comply with the
requirements of the ISPS Code relating to the Vessel and the
Company. Upon request the Owners shall provide a copy of the
relevant International Ship Security Certificate (or the Interim
International Ship Security Certificate) to the Charterers. The
Owners shall provide the Charterers with the full style contact
details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss,
damage, expense or delay, excluding consequential loss, caused by
failure on the part of the Owners or "the Company" to comply with
the requirements of the ISPS Code or this Clause shall be for the
Owner's account.

(B) (i) The Charterers shall provide the CSO and the Ship Security
Officer (SSO)/Master with their full style contact details and any
other information the Owners require to comply with the ISPS Code.

14

COPY

RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

CLAUSE 62 - CONTINUED

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.

(C) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

(D) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owner's account.

(E) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.



RIDER CLAUSES TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED
APRIL 15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS CHARTERERS

Laytime for loading and discharging ports is to be non-reversible.

## CLAUSE 64

In view that "Clean on Board" Bills of Lading are required, the
Master shall be entitled to reject any cargo, which would not so
qualify, and Shipper to replace it with sound cargo. However if the
Master wrongfully rejects any cargo, then all time/expenses
associated with same to be for the Owner's account.

*   *   *   *

16

Tarrytown April 15th, 2005

## *SIDE LETTER*

TO M/V "BONASIA" OR SUBSTITUTE CHARTER PARTY DATED APRIL
15TH, 2005 BETWEEN D/S NORDEN A/S, COPENHAGEN, DENMARK AS
OWNERS AND GLOBAL INFRASTRUCTURE HOLDINGS, LTD. AS
CHARTERERS

It is hereby agreed that the total commission of 2.50% is
payable to LALEMANT (USA) INC. on freight, dead freight and
demurrage earned under this Charter Party

All terms and conditions of the above mentioned Charter.

_____                    _____
For and/on behalf of Charterers                          Owners